# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES PICARD, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1966** |
| **MARLIN GUSMAN, ET AL.** | **SECTION "S"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, James Picard, III, a state pretrial detainee, filed this civil action pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. Plaintiff has sued Orleans Parish Sheriff Marlin Gusman, the Orleans Parish Sheriff's Office, the City of New Orleans, and Charles C. Foti, claiming that those defendants failed to provide him with adequate medical care for injuries he sustained when he slipped in a puddle of water.

### I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[1] Regarding such lawsuits, federal law further requires:

---

[1] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[2] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Improper Defendants

Plaintiff is claiming that he has been denied adequate medical care, but he has not identified any of the individuals who actually denied him care. Rather, he has named four other defendants, all of whom should be dismissed for the following reasons.

### A. Orleans Parish Sheriff's Office

Plaintiff sued the Orleans Parish Sheriff's Office. The claim against that defendant must be dismissed because a parish sheriff's office simply is not a legal entity subject to suit. Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 283 (5th Cir. 2002); see also Naquin v. Orleans Parish Sheriff's Office, Civ. Action No. 11-2878, 2012 WL 262988, at *3 (E.D. La. Jan. 9, 2012), adopted, 2012 WL 262877 (E.D. La. Jan. 30, 2012); Jacobson v. Gusman, Civ.

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

3

Action No. 09-3695, 2009 WL 2870171, at *2 (E.D. La. Aug. 10, 2009), adopted, 2009 WL 2957961 (E.D. La. Aug. 26, 2009); Haywood v. Gusman, Civ. Action No. 06-3517, 2008 WL 516714, at *3 (E.D. La. Feb. 26, 2008); Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988).

### B. Charles C. Foti

Plaintiff also named Charles C. Foti as a defendant; however, plaintiff has made no factual allegations, and therefore has stated no actionable claim, against Foti. Moreover, there is no conceivable basis for a nonfrivolous claim against Foti. Although Foti formerly served as Orleans Parish Criminal Sheriff, he left that position in 2004, many years before the events giving rise to plaintiff's claims.

### C. City of New Orleans

Plaintiff also sued the City of New Orleans. However, the City is an improper defendant because it has no direct control over the Orleans Parish Prison system. The responsibility for a Louisiana parish jail is divided between the local governing authority and the sheriff. Put simply, the governing authority is responsible only to finance and maintain the jail, La.Rev.Stat.Ann. §§ 15:304,[3] 15:702,[4] and 33:4715,[5] while the sheriff is responsible for the day-to-day operation of the

---

[3] La.Rev.Stat.Ann. § 15:304 provides in pertinent part: "All expenses incurred in the different parishes of the state or in the city of New Orleans by ... confinement ... of persons accused or convicted of crimes ... shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."

[4] La.Rev.Stat.Ann § 15:702 provides in pertinent part: "The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."

[5] La.Rev.Stat.Ann. § 33:4715 provides in pertinent part: "The police jury of each parish shall provide ... a good and sufficient jail ...."

4

jail, La.Rev.Stat.Ann. §§ 15:704[6] and 33:5539(C).[7] The division of responsibilities between the City of New Orleans and the Orleans Parish Sheriff was concisely set forth in Broussard v. Foti, Civil Action No. 00-2318, 2001 WL 258055 (E.D. La. Mar. 14, 2001):

> In Louisiana, sheriffs are the final policy makers with respect to the management of jails. See Jones v. St. Tammany Parish Jail, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998). Under Louisiana law, the authority of the Orleans Parish Criminal Sheriff is derived from the state Constitution, not from the City of New Orleans. See La. Const. art. 5 § 27. The sheriff's office, not the City, controls the inmates of the jail, the employees of the jail, and the daily management and operation of the jail. See La. R.S. § 33:1435; 15:704; O'Quinn v. Manuel, 773 F.2d 605, 609 (quoting Amiss v. Dumas, 411 So.2d 1137, 1141 (La.App. 1st Cir.), writ denied, 415 So.2d 940 (La. 1982)).
>     Under the statutory framework, the responsibility of the City of New Orleans' is to finance and physically maintain the jail. See Griffin v. Foti, 523 So.2d 935, 937 (La.App. 4th Cir. 1988); see also O'Quinn, 773 F.2d at 609. In Louisiana, the legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility. See Amiss, 411 So.2d at 1141. The City has no authority over the operations of the jail or the management of the sheriff's employees. See Jones, 4 F. Supp. 2d at 613; O'Quinn, 773 F.2d at 609 (administration of the jail is province of sheriff). In other words, the City's financial obligations do not constitute authority to control how the sheriff fulfills his duties. See O'Quinn, 773 F.2d at 613 (citing Jenkins v. Jefferson Parish Sheriff's Office, 402 So. 2d 669, 670 (La. 1981)). Thus, the City's responsibilities are limited to funding and maintaining the jail. See La. R.S. § 15:702.

Broussard, 2001 WL 258055, at *2. It therefore follows that the City does not have a legal duty to oversee the daily management of the Orleans Parish Prison system, including the medical care provided to the inmates therein. See Bush v. LaFourche Parish Council, Civ. Action No. 09-3436, 2012 WL 258591, at *1-2 (E.D. La. Jan. 26, 2012). Because the City has no legal duty to oversee the jail's medical care or other daily operations, plaintiff's claim against the City has no merit.

---

[6] La.Rev.Stat.Ann. § 15:704 provides in pertinent part: "Each sheriff shall be the keeper of the public jail of his parish ...."

[7] La.Rev.Stat.Ann. § 33:5539(C) provides in pertinent part: "Each sheriff shall be keeper of the public jail of his parish ...." This provision formerly appeared at La.Rev.Stat.Ann. § 33:1435(A).

D.  Sheriff Marlin Gusman

Plaintiff also sued Sheriff Gusman.  However, while Gusman is in charge of the daily management of the parish prison system as previously noted, plaintiff has failed to state a proper claim against Gusman in either his individual or official capacity.

Clearly, plaintiff has not stated a proper claim against Gusman in his individual capacity. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Gusman is not a member of the jail's medical staff, and plaintiff does not allege that Gusman had any personal involvement whatsoever in the purported denial of medical care.  Further, Gusman may not be held liable pursuant to § 1983 under any theory of strict liability[8] or vicarious liability[9] for federal civil rights violations allegedly committed by his subordinates.

Plaintiff likewise has not stated a proper claim against Gusman in his official capacity. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).

---

[8]  Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[9]  Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." ); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

Accordingly, an official-capacity claim against Gusman would in reality be a claim against the local governmental body itself. Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that he was denied medical care as a result of a policy or custom, much less identify such a policy or custom.

For all of the foregoing reasons, it is clear that plaintiff has not named a proper defendant, and his complaint is therefore subject to dismissal on that ground alone. Nevertheless, out of an abundance of caution, the Court further notes that plaintiff's underlying claim is frivolous for the following reasons even if a proper defendant had been named.

7

III.  Plaintiff's Claim

As noted, plaintiff claims that he has not been provided with adequate medical care for injuries he sustained when he slipped in a puddle of water.  However, it must be remembered that an inmate's constitutional right to medical care is extremely limited.  Certainly, the federal constitution does not require that inmates receive optimal care.  The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  Moreover, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

Rather, the federal constitutional rights of an incarcerated person, regardless of whether he is a pretrial detainee or a convicted prisoner, are violated only if his serious medical needs are met with deliberate indifference on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him

> incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

The certified medical records from the Orleans Parish Prison system, which have been filed into this federal record,[10] establish that plaintiff's serious medical needs were not met with deliberate indifference. Those records show that, as plaintiff candidly acknowledges in his complaint, he was transferred to a local hospital for evaluation on May 30, 2012, the same day as his accident. The hospital staff noted that he had a sprained ankle, neck pain, back pain, and an elbow contusion. He was discharged back to the jail shortly thereafter, with a notation that no speciality follow-up examination or care was needed, no additional tests were required, and the only treatment recommended was "analgesia, NSAIDs, muscle relaxer." On discharge, it was noted that plaintiff was ambulatory, could resume his usual activity "as tolerated," and any follow-up should be handled by the jail's physician. When he arrived back at the jail, his hospital discharge records were reviewed and, in accordance with the recommendations therein, plaintiff was placed on Naprosyn (a nonsterodidal anti-inflammatory drug (NSAID) used to treat inflammation and pain) and Flexeril (a muscle relaxant). Therefore, the jail medical staff followed the hospital's recommendations to the letter.

---

[10] Rec. Doc. 6-1.

Plaintiff complains that the medications did not cure his pain. However, federal constitutional protections are not violated simply because an inmate's medical treatment was unsuccessful or because pain persisted despite treatment. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Moreover, the medical records contain no other sick call requests from plaintiff about this issue until July 11, 2012, when he submitted a request complaining of pain. The following day, he was examined by a nurse, who noted that plaintiff had ambulated to the medical department without difficulty. He was nevertheless referred for further evaluation, which occurred on July 19, 2012. At that time, in light of his claimed discomfort, he was again prescribed Naprosyn and Flexeril.

Based on the foregoing evidence, the Court finds that any allegation of deliberate indifference is clearly rebutted by plaintiff's medical records. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Those records show that the jail medical staff did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition. Far from ignoring his condition or denying him care, plaintiff was immediately sent to an outside hospital for evaluation after his accident, the jail staff followed the hospital's recommendations for treatment upon discharge, and he was prescribed additional medication on the single occasion he again complained of pain.

The fact that plaintiff apparently believes that more could have done is of no moment. As previously explained, an inmate is guaranteed only adequate, *not* optimal, medical care. See Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."). Further, absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Id. at 346. For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is simply no basis whatsoever to engage in such second-guessing here.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this twenty-sixth day of November, 2012.

*[signature]*
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.